HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| UNITED STATES OF AMERICA, | CASE NO. CR16-5207RBL |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |
| v. | |
| CINDI ALLISON, | |
| Defendant. | |

THIS MATTER is before the Court on Defendant Allison's Renewed Time-Sensitive Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1). [Dkt. #137]. The Court has reviewed the materials filed for and against the motion. Oral argument is not necessary. For the reasons below, the motion is **DENIED**.

**I. BACKGROUND**

On June 30, 2017, after four days of evidence, a jury convicted Allison of six counts of wire fraud for a scheme involving $478,398.04 in stolen funds. After the jury returned the verdict, this Court remanded the Allison to custody and on March 2, 2018, sentenced her to a 71-month prison term.

1    Allison appealed her conviction. The Ninth Circuit affirmed the conviction in a

2    memorandum opinion. *See United States v. Allison*, 765 F. App'x 252 (9th Cir. 2019). Allison

3    also sought review under § 2255, which this Court denied.

4    Allison is now 50 years of age and housed at the Carswell Federal Medical Center

5    (Carswell FMC). She has a release date of July 14, 2022. On April 3, 2020, Allison's counsel

6    emailed the warden to request immediate compassionate release on her behalf. Allison filed her

7    first motion for relief three days later. *See* Dkt. 127, 128. The Court denied that motion without

8    prejudice to allow Defendant to re-file upon exhausting the administrative process as provided in

9    18 U.S.C. § 3582(c)(1)(A). *See* Dkt. 136.

10    Allison has now exhausted that process and again seeks to be released because of the

11    current coronavirus disease 2019 (COVID-19) pandemic.

## II. ANALYSIS

**A. Compassionate Release**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original; quoting 18 U.S.C. § 3582(b)). As relevant to Allison's motion, those circumstances are set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to permit an inmate, who satisfies certain statutorily mandated administrative procedures, to file a motion with the district court for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). As amended, the statute now provides:

> (c) **Modification of an imposed term of imprisonment**. —The court may not modify a term of imprisonment once it has been imposed except that—
>
>    (1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) (italics added indicating the portion of the statute the First Step Act amended).

Thus, the First Step Act amended § 3852(c)(1)(A) to allow prisoners to directly petition a district court for compassionate release, removing the BOP's prior exclusive gatekeeper role for such motions. The statute now provides the court with authority to reduce a sentence upon the motion of a defendant if three conditions are met: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id*.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) is found in the United States Sentencing Guidelines § 1B1.13. The policy statement provides in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the

ORDER DENYING MOTION FOR
COMPASSIONATE RELEASE - 3

original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

    (1)(A) Extraordinary and compelling reasons warrant the reduction; or

    (B)  The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2)  The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)  The reduction is consistent with this policy statement.

USSG § 1B1.13. Because Allison is not at least 70 years old and was not sentenced under 18 U.S.C. § 3559(c), only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to Allison's motion. Thus, under the policy statement, Allison is entitled to relief if she demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) she is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

        The Sentencing Commission's application notes to this policy statement provide further guidance. Application Note 1 to USSG § 1B1.13 provides that "extraordinary and compelling reasons" for a sentence reduction exist when:

(A) Medical Condition of the Defendant.

    (i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or

       (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG 1B1.13 cmt. n.1.

  1. <u>Extraordinary and Compelling Reasons</u>

  Allison bears the burden of establishing that compelling and extraordinary reasons exist that justify compassionate release. *United States v. Holden*, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *3 (D. Or. Apr. 6, 2020). The Government argues that Allison has not met her burden because she is not suffering from a "terminal illness" and none of her medical conditions "substantially diminish" her ability "to provide self-care" within the facility in which she is confined, and thus she cannot meet the strictures of subpart (A) of the Sentencing Commission's application note. ("To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [she] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (quoting *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-*3 (E.D. Cal. Feb. 12, 2020)).) Indeed, Allison has not shown that the facility in which she is confined is failing to adequately manage either her maladies. Thus, her medical conditions, standing alone, do not justify an order requiring Allison's release.

  Further, the present crisis surrounding the COVID-19 pandemic adds nothing to Allison's motion. Although Allison argues that her underlying health conditions make her more vulnerable to COVID-19, she has not contracted a COVID-19 infection; and so, ultimately, Allison relies on the possibility that she may become infected with COVID-19 while confined to justify her

release. However, the court agrees with the Government that "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release." (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (citing USSG § 1B1.13); *United States v. Zywotko*, No. 219CR113FTM60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (same; citing *Eberhart*, 2020 WL 1450745, at *2)).)

Although Allison seeks to portray the Bureau of Prisons' response as inadequate, she is housed at a medical center. Allison has not made any showing that her medical center is unequipped to provide appropriate medical treatment if she were to become sick. And, as described below, the BOP is making every effort to combat the spread of this infectious disease. The speculative possibility of COVID-19, standing alone, simply does not present the type of extraordinary and compelling reason to release early from his sentence.

Even if Allison is at some particular increased medical risk for COVID-19 at FMC Carswell, she must still establish that she would qualify for immediate release under § 3582. Under the Guidelines, a defendant must establish she is suffering from either a terminal illness or a "serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. n.1. Allison points only to certain manageable health conditions that put her at a higher risk of contracting COVID-19. But the binding Guideline language does not contemplate early release merely to avoid a higher risk of contraction. The Guidelines require that a defendant be unable to provide self-care, which is not the case here. As such, Allison cannot satisfy the mandatory language of § 3582.

Although Congress indisputably acted in the First Step Act to expand the availability of compassionate release, at the same time, it expressly imposed on inmates the requirement of initial resort to administrative remedies. Once received, the Bureau of Prisons conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a).

Aside from assessing a defendant's medical condition, conduct while incarcerated and programming completed, the request also allows for an assessment of a defendant's release plan since the plan is a required part of the request. An appropriate release plan is essential to ensure that a defendant actually has a safe place to live and access to health care in these difficult times. Shortening a defendant's sentence where there is no adequate release plan offers no benefit to the health of the inmate and in the process likely further endangers the community into which the defendant is release. Indeed, a residential reentry center in this district has already had at a case of COVID-19, as have two in Texas, where Allison plans to release.

The Bureau of Prisons has authority to under 18 U.S.C. § 3624(c)(2) to release a defendant to home confinement after that defendant completes the shorter of 10% of the term of imprisonment or 6 months. It also has authority under 34 U.S.C. § 60541(g) to place into home detention qualifying elderly inmates or inmates with terminal illness. And because of the COVID-19 crisis, the Attorney General issued directives to the Bureau of Prisons on March 26 and April 3, 2020, to begin reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, to determine which inmates would be suitable for release to home detention. The purpose of the review was to use home confinement, where appropriate, to protect the health and safety of both those in BOP custody and BOP personnel.

1          Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act
2   ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney
3   General finds that emergency conditions will materially affect the functioning of the Bureau of
4   Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place
5   a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United
6   States Code, as the Director determines appropriate." On April 3, 2020, the Attorney General
7   made the findings demanded by the CARES Act and gave the Bureau of Prisons Authority to
8   implement these new standards for inmates who are housed at the most affected of the Bureau of
9   Prisons institutions.

10         The Attorney General directed that in implementing the new standards, the BOP give
11  priority to the most vulnerable inmates at the most affected facilities and to begin implementing
12  this directive immediately at the identified facilities and any other facilities at risk of similar
13  problems. The Attorney General directed that the review includes a much broader pool of at-risk
14  inmates—not only those who were eligible for transfer prior to the Attorney General exercising
15  his authority under the CARES Act.

16         Based on these directives, the Bureau of Prisons is making every effort to place those
17  who qualify into home confinement as quickly as possible. Inmates who qualify are transferred
18  to following a 14-day quarantine at an appropriate BOP facility and in appropriate cases are
19  permitted to undergo the 14-day quarantine in the residence to which the inmate is being
20  transferred rather than in the BOP. As of this date, some 2,431 inmates have been transferred to
21  home detention.

22         This Court may not reduce a defendant's sentence unless it finds that "the defendant is
23  not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §

24

3142(g)." USSG § 1B1.13; *see also United States v. Gotti*, No. 02-cr-743-CM, 2020 WL 497987 (SDNY 2020) (finding that even if medically eligible, release was inappropriate because defendant poses a continuing danger to the public). This record precludes such a finding.

Nothing about the COVID-19 pandemic reduces Allison's danger to others. Danger to the community is not limited to physical violence. It can take different forms. *See, e.g., United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."). Allison has certainly shown herself to be a risk for economic harm, as by defrauding her victim of $478,398. Moreover, leading up to the trial in this case, Alison sought to retaliate against the victim by initiating wage theft investigations against her. Her email to government counsel during trial blaming counsel for the charges against her further points to risk of retaliation upon early release. The victim in this case has expressed a fear of retaliation based on Allison's prior actions. Allison's release right now presents a particular danger to the community because first responders are focused on mitigating the effects of the COVID-19 outbreak, so they are less equipped to prevent and respond to wrongdoing.

In the current climate, irresponsible social habits can also endanger the health of the community. Texas, where Allison resides, is under an order requiring certain safety protocols by everyone, even as their public spaces reopen. In order to be effective, people must follow the rules and voluntarily comply. Such rules rely largely on voluntary obedience. A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death. Allison, through her criminal conduct, demonstrates a higher risk of irresponsible conduct than other members of the public. Residing in her mother's home in Ben Wheeler, Texas, the town where she committed the subject crimes, provides no assurance that she can perform responsibly in a civil society experiencing a pandemic.

### III. CONCLUSION

The spread of COVID-19 alone does not meet the high standards for early release for Defendant Cindi Allison. For these reasons her motion is **DENIED**.

IT IS SO ORDERED.

Dated this 10th day of June, 2020.

Ronald B. Leighton
United States District Judge